John M. Fitzpatrick, Esq.
TOWE & FITZPATRICK, PLLC
619 SW Higgins, Suite O
PO Box 1745
Missoula, MT 59806
Tel: (406) 829-1669
Fax: (406) 493-0538
jfitz@towefitzlaw.com

Neel Hammond, Esq.
HAMMOND LAW, PLLC
P.O. Box 9155
234 E. Pine Street
Missoula, Montana 59807
Tel: (406) 543-2494
neel@hammondlawpllc.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| ANNETTE and RAY ANDERSON, | ) | |
| | ) | Cause No. |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | COMPLAINT |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiffs, through their attorneys, allege:

1. Annette and Ray Anderson are a married couple who are citizens and residents of the City of Missoula, County of Missoula, State of Montana.

2. This Court has jurisdiction over this case pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671, et seq., in that the claim arises from the Government's conduct in providing health care services at Partnership Health Center (PHC) in Missoula, Montana. PHC is a Health Center Program grantee under 42 U.S.C. 254b, and a deemed Public Health Service employee under 42 U.S.C. 233(g)-(n). The negligent acts and omissions that are the subject of this action were committed by the Government's agents and employees while acting within the course and scope of their employment. This Court has exclusive jurisdiction over tort claims brought against the United States pursuant to 28 U.S.C. § 1346(b).

3. The Plaintiffs' claims were filed in writing with the appropriate Federal agency on June 30, 2016. The United States has not made final disposition of the claims within six months after they were filed. Accordingly, Plaintiffs have appropriately exhausted their administrative remedies under 28 U.S.C. § 2675.

4. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is proper in this Division pursuant to Local

Rules 3.2(b) and 1.2(c) because Missoula County is a proper venue under Montana law and Missoula County is within the Missoula Division.

5. Starting in approximately December of 2012, Annette presented on multiple occasions to PHC in Missoula for urinary and urinary tract issues. She consistently had abnormal urinalysis testing in that there was blood in her urine. Hematuria can be caused by a number of benign and deadly causes, including cancer. Annette was at increased risk for cancer because of her age and other factors PHC providers were aware of. Despite the risk of cancer, PHC did not do anything to investigate serious causes or refer Annette to a specialist for over three years, despite continuous urinary tract issues and blood in her urine. When she was finally evaluated by a urologist, she was diagnosed with high stage cancer of her bladder and urethra. Because of the delay in diagnosis, the cancer was allowed to progress to a high stage, which required aggressive and life-altering surgery and treatment, and will more likely than not cause Annette's premature death. Had the standard of care been complied with, Annette's cancer would have been diagnosed at a low stage which could have been cured with less invasive treatment and she would more probably than not survive.

6. At all relevant times, the PHC providers who provided services to Annette were acting within the course and scope of their employment as actual,

ostensible or deemed employees of PHC another governmental agency and/or the United States of America.

7. Between December of 2012 and December of 2015, Annette was seen at PHS on multiple occasions for urinary tract related issues.

8. On December 4, 2012, she was seen at PHC for follow-up of a UTI. Despite three days of antibiotics a urinalysis on that date was abnormal in that it contained red blood cells on microscopic examination.

9. A urinalysis on September 14, 2013 was also abnormal in that it contained "3+ occult blood" on microscopic examination.

10. According to a record dated May 1, 2014, it is documented that she again presented to PHC for symptoms believed to be consistent with another UTI. The report further documents "patient has a past hx of severe UTI + Pyelo that landed her in the hospital one year prior and she is concerned that some of those symptoms have returned." "Annette averages about 1 UTI/year and she responds to them now more rapidly so she doesn't end up at the ED or the hospital." Urinalysis again demonstrated blood in her urine.

11. On May 20, 2015, a urinalysis obtained at PHC was again abnormal in that it contained "250 occult blood."

12. On November 24, 2015, Annette was seen again at PHC for urinary tract

symptoms including "Dysuria: Symptoms ongoing for 6 months." The assessment was dysuria and hematuria (blood in urine). Urinalysis was again abnormal with 3+ occult blood.

13. On visits to PHC on December 23, 2015 and January 19, 2016, Annette again presented with urinary tract symptoms and was found to have red blood cells in her urine.

14. It is important to note that from December 2012 to January 2016, no normal urine was obtained, no urine cytology requested, no urology consult obtained and no CT, MRI or PET scans were ordered.

15. It was not until January 19, 2016 that she was finally referred to a urologist to "rule out a structural cause of her recurrent urinary tract infections and hematuria." A structural and/or dangerous cause for these medical issues should have been in the differential diagnosis since she began having them and should have been investigated far earlier. Differential diagnosis requires clinicians to rule out the most life-threatening treatable causes for symptoms.

16. Annette was seen at Five Valleys Urology in Missoula on January 25, 2016. CT urography was obtained and was concerning with urethral diverticulum and severely thickened abnormal appearing bladder base/urethra.

17. On February 9, 2016, Annette underwent cystoscopy and tissue resection

surgery. The tissue removed from the base of her bladder was pathologically evaluated and was found to be cancerous. The pathological diagnosis was "poorly differentiated carcinoma with signet ring features."

18. On March 14, 2016, Annette underwent surgery to remove her urethra, bladder and ovaries, as well as extended bilateral pelvic lymph node dissection. Because her bladder and urethra were removed, the surgery also included ileoconduit urinary diversion, in which stents were placed in the ureters and approximated to drain through an opening in her abdomen.

19. Pathology from this procedure described the bladder specimen as containing a 2.8 cm, poorly differentiated, signet ring cell adenocarcinoma with ulceration and extensive lymphovascular invasion. One out of three perivesicular lymph nodes and two out of six right pelvic and iliac lymph nodes were positive for cancer. Final AJCC stage was pT3 N2 M0, stage 3 or 4.

20. Because of the advanced stage of the cancer on diagnosis, Annette required chemotherapy. In light of her advanced disease, it is more likely than not this will be palliative.

21. As documented in her PHC medical records, Annette had at least a 3 year history of: recurring UTIs, hematuria, irritative voiding symptoms, past and current history of smoking, and age > 35 years. These are all common risk factors for urinary

tract malignancies in patients with microhematuria. The presence of hematuria was persistent over this time frame with no documentation of any "normal" urinalysis in her medical record.

22. Considering the documented and known signs, symptoms and risk factors, as well as the fact that urinary tract cancer is deadly if not timely diagnosed and allowed to progress to high stage, the standard of care required Annette's PHC providers to include cancer in the differential diagnosis and to investigate that potential cause far earlier in Annette's medical course.

23. Had there been earlier recognition of such significant historical events as well as documented laboratory findings, a more timely intervention with appropriate testing/procedures/referral would have occurred and the cancer would have been diagnosed and treated while at a more probably than not survivable stage.

24. In providing medical services to Annette, PHC, through its agents and employees, violated accepted standards of care and was negligent. Such negligence was a substantial factor in bringing about past and future harm and caused damage, harm and loss to Plaintiffs.

25. PHC's negligence allowed Annette's bladder cancer to progress from a low stage survivable cancer to Stage 3 or 4 cancer that is probably not survivable. It also led to the need for more aggressive treatment, which would have been minimized

or avoided with earlier diagnosis.

26. Pursuant to Mont. Code Ann. § 27-1-739(3)(a), the damages caused by the delay in diagnosis and treatment must not be reduced by the percent loss of chance.

27. Annette married Ray Anderson on August 9, 2010.

28. Annette's cancer and the illness caused by her chemotherapy have deprived Ray of her love, affection, companionship and services.

29. In the event Annette dies from her cancer before the claims at issue in this cause of action are resolved, her death will give rise to wrongful death and survival claims. In that event, a motion will be made to amend this Complaint.

WHEREFORE, Plaintiffs seek judgment against the Defendant as follows:

1. For a judgment in such amounts as shall be proven at trial;

2. For costs of this action;

3. For such other relief as the Court deems just.

Dated this 21st day of February, 2017

    /s/ John M. Fitzpatrick
    John M. Fitzpatrick
    TOWE & FITZPATRICK, PLLC

    /s/ Neel Hammond
    Neel Hammond
    HAMMOND LAW, PLLC

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues of fact in this case.

Dated this 21st day of February, 2017.

                              /s/ John M. Fitzpatrick
                              John M. Fitzpatrick
                              TOWE & FITZPATRICK, PLLC


                              /s/ Neel Hammond
                              Neel Hammond
                              HAMMOND LAW, PLLC